UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTONIO GROSS, JR., RICHARD FINK, IV, and
JOHN CUMMINGS,

                              Plaintiffs,

PHIL SACCHITELLA, Individually and in his capacity as
Parent and Natural Guardian of DIANE SACCHITELLA,
a Minor, DAN SACCHITELLA, and DIANE SACCHITELLA,
a Minor.

                              Defendants.

**COMPLAINT**

**Civil Action No.**

_____

Plaintiffs, Antonio Gross, Jr., Richard Fink, IV and John Cummings, by and through their attorneys, Boylan, Brown, Code, Vigdor & Wilson, LLP, for their Complaint against Defendants, Phil Sacchitella, individually and in his capacity as parent and natural guardian of Diane Sacchitella, a minor, Dan Sacchitella, and Diane Sacchitella, a minor, allege as follows:

### GENERAL BACKGROUND

1. This is an action brought under the Copyright Act of 1976, 17 USC §§ 101, et seq., and for the related claims of breach of contract, detrimental reliance, conversion, libel, trade libel, and unjust enrichment. This Court has jurisdiction of this action under 28 USC §§ 1331, 1338 (a) and 1338 (b), and has supplemental jurisdiction under 28 USC § 1367.

### PARTIES

2. Antonio Gross, Jr. ("Gross") is an individual residing at 569 County Line Road, Ontario, New York 14519.

3. Richard Fink, IV ("Fink") is an individual residing at 6385 North Lake Road, Bergen, New York 14416.

4. John Cummings ("Cummings") is an individual residing at 7600 Buffalo Road, Bergen, New York 14416. (Gross, Fink and Cummings are hereinafter sometimes collectively referred to as "Plaintiffs.")

5. Upon information and belief, Defendants Phil Sacchitella, Individually and in his capacity as Parent and Natural Guardian of Diane Sacchitella, a minor, Dan Sacchitella, and Diane Sacchitella, a minor, are individuals residing at 2070 State Route 65, Bloomfield, New York 14464.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to the Copyright Act of 1976, 17 USC §§ 101, et seq. and for related claims this Court has jurisdiction of this action under 28 USC §§ 1331, 1338(a) and 1338 (b) and under its supplemental jurisdiction 28 USC §1367.

7. Venue is proper in the Western District of New York under 28 USC §§ 1391 and 1400 (a).

## FACTS

8. From August, 2004 through December, 2005, Fink spent approximately 2,000 hours providing personal vocal and performance lessons to Diane Sacchitella (hereinafter sometimes referred to as "Diane") and otherwise developing and promoting Diane as a vocal and performing artist. During that time period, Fink incurred travel expenses in transporting Diane or traveling to Diane's residence to give Diane lessons.

9. Fink and his songwriting partner, Cummings, composed musical compositions and Fink produced musical recordings of Diane rendering vocal performances on those compositions over musical performances by Fink, Cummings and others (the "Recordings").

10. Fink spent numerous hours with Diane, producing her as a recording artist, developing her as a performing artist, and creating promotional photographs (the "Photographs") of her.

11. Fink also spent copious hours, and incurred expenses related to, creating and maintaining a Web site on MySpace.com for the sole purpose of promoting the Recordings and launching Diane as a recording and performing artist (the "MySpace Site") employing the pseudonym, "Kierra Kwan" (the "Name") as Diane's moniker on the MySpace Site. As a result of Fink's efforts and those of a third-party he hired to assist him, Fink garnered thousands of visitors daily to the MySpace Site.

12. Fink was the sole creator and owner of the MySpace Site and the Name (a name under which Fink is registered to business).

13. With the exception of approximately twelve hours of vocal lessons, Fink has never been paid for any of the above-described services or reimbursed for any of his out-of-pocket expenses incurred in developing and promoting Diane as a recording and performing artist.

14. Fink is the owner of the original master recordings (the "Recordings").

15. During the period Fink worked with Diane, Diane's father, Phil Sacchitella, and Diane expressly agreed that Fink would serve as Diane's manager and would be entitled to twenty percent (20%) of Diane's gross artistic revenues should Fink be successful in his efforts in developing and exploiting Diane's artistic skills.

16. In reliance upon Phil Sacchitella's and Diane's representations that Fink would serve as Diane's personal manager in the entertainment industry, and with Phil Sacchitella's and Diane's express approval, Fink sought the advice and counsel of Gross with regard to Fink's management of Diane.

17. In November 2005, Phil Sacchitella and Diane and Fink and Gross agreed that Fink and Gross would proceed with their efforts to develop Diane as a performing artist and to attempt to procure a recording contract on her behalf. At Phil Sacchitella and Diane's specific behest, Gross thereafter contacted numerous recording industry professionals to attempt to

secure meetings for the purpose of presenting Diane for their consideration. As the sole result of Gross' efforts, Gross secured a meeting with Zomba Music Publishing ("Zomba") for the purpose of presenting Diane for consideration for a publishing contract with Zomba.

18. On November 17, 2005, Phil Sacchitella expressly represented to Fink and Gross that he wished to have Fink and Gross co-manage Diane and that Fink *and* Gross would be entitled to twenty percent (20%) of Diane's gross artistic revenues. Phil Sacchitella made this representation in order to induce Fink and Gross to travel to New York City for meetings with representatives of Zomba and other recording industry professionals.

19. Fink and Gross attended the meeting with Zomba solely in reliance upon Phil Sacchitella's express representation that he wished to have Fink and Gross co-manage his daughter and that Fink and Gross would be entitled to 20% of Diane's gross artistic revenues.

20. As a direct result of Fink and Gross' initial meeting with Zomba, Zomba invited Phil Sacchitella and Diane to travel to New York City, accompanied by Plaintiffs, to discuss Zomba's intention to work with Diane, Fink and Cummings to develop compositions for Diane to record in an effort to secure a recording contract for Diane.

21. During that second meeting with Zomba, Zomba represented to Diane, Phil Sacchitella, Fink and Gross that it wished to move forward with a publishing contract and that a formal offer would be forthcoming. In the days following that meeting, at the specific behest of Phil Sacchitella, Plaintiffs' had their attorney prepare and forward to Phil Sacchitella's attorney a proposed management agreement setting forth the terms to which the parties had agreed regarding Gross and Fink's management of Diane.

22. During this time period, there were numerous telephone conversations and email communications among Fink, Gross and Phil Sacchitella regarding Gross and Fink's management of Diane and the anticipated offer from Zomba. Phil Sacchitella continued to

represent to both Fink and Gross his desire to have Fink and Gross manage Diane and to communicate his enthusiasm for the Zomba deal.

23. Approximately ten days after the second Zomba meeting, Zomba presented its written offer to Gross. When informed that Gross had received the offer, Phil Sacchitella advised Fink that he wished to meet with Gross and Fink. Within a matter of hours of Gross' receipt of the written offer from Zomba, Phil Sacchitella advised Fink and Gross that he no longer wished to have Gross co-manage Diane, despite the fact that Gross had procured a significant publishing deal on Diane's behalf at the specific behest of Phil Sacchitella and with the expectation that Gross would co-manage Diane and share in 20% of Diane's gross artistic revenues.

24. Upon information and belief, during the approximately ten day period in which the parties were waiting for the formal offer from Zomba, in breach of his express representations to Fink and Gross, Phil Sacchitella retained the services of another entertainment manager for the purpose of leveraging the Zomba offer to procure an offer from Sony Music Publishing ("Sony"), an affiliated company of Zomba, while fraudulently representing to Fink and Gross that he wished to have them co-manage Diane and that he wished to enter into the publishing contract with Zomba.

25. Thereafter, Phil Sacchitella continued to represent to Fink his desire to have Fink involved in Diane's entertainment career and further represented to Fink that Fink would be fairly compensated for his time and reimbursed for the expenses he incurred in the training, development and promotion of Diane.

26. Fink continued to maintain the MySpace page he created for Diane.

27. Upon information and belief, on or about March 15, 2006, Phil Sacchitella and Dan Sacchitella converted for their own use the MySpace Site that Fink had owned, created and maintained, rendering Fink unable to access the MySpace Site and its contents, including the

Name contained therein. Furthermore, Phil Sacchitella and Dan Sacchitella then posted to the MySpace Site a photograph of Diane for which Fink owned the copyright, deleting the copyright notice.

28. Thereafter, either Phil Sacchitella or Dan Sacchitella, using Dan Sacchitella's MySpace login "Saccmaster," contacted members of Fink's MySpace "Friends" list (the MySpace names and logins for the thousands of MySpace members who had visited and posted comments to Fink's MySpace Site) and made libelous statements about Fink, Gross and Cummings.

29. In particular, Phil Sacchitella or Dan Sacchitella, using the "Saccmaster" MySpace login, sent messages to MySpace members accusing Cummings of criminal sexual conduct with Diane, a minor, and disparaged Fink's and Gross's business practices. Specifically, they stated:

- "What happened was my baby sister was working with Richard and Johnny, writing songs and recording. She did a duet with Richard on his band's CD Scattered Ink (at 14), everything was going good until Johnny (23) was secretly trying to have an inappropriate relationship with my sister (then 15). My dad freaked, but he trusted Richard to keep an eye on them and Richard screwed him."
- "I feel bad for Carmireli too, she is very pretty and a good singer in her own right, and she is being poorly managed."
- "Whatever you do you need to contact Carmireli's parents and get them to get her away from Richard and Tony, they are not working in her best interest."
- "After seeing how they behave, especially their doofy manager Tony Gross, none of the publishing execs will have anything to do with them."

## AS AND FOR A FIRST CAUSE OF ACTION

30. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 29 of this Complaint, as though fully set forth herein.

31. Phil Sacchitella's and Diane's promises to Fink and Gross to induce Fink and Gross to manage Diane constituted a binding verbal contract.

32. Phil Sacchitella and Diane have terminated that contract but despite due demand, have failed to compensate Fink and Gross for their efforts under the contract.

33. The failure to compensate said Plaintiffs constitutes a breach of contract.

34. Upon information and belief, as a direct result of Fink's and Gross's efforts under the management contract with Diane (as further joined in by Phil Sacchitella), Diane Sacchitella procured and entered into a contract with Sony, wherein Diane received or is entitled to received a benefit of approximately $175,000 or higher.

35. In further reliance on and in furtherance of their duties under the contract, Fink and Gross expended monies in traveling to meet with recording industry executives, paying workers to assist in maintaining the MySpace Site, in traveling to meet with Diane, in transporting Diane, and in photographing and recording Diane for her general promotion.

36. Fink and Gross have demanded payment for their efforts as Diane's manager, and Defendants Phil Sacchitella and Diane have refused to compensate Fink and Gross for their efforts.  Fink and Gross are entitled to a portion of any revenues paid by Sony to Diane or Phil Sacchitella.

37. As a result of Phil Sacchitella's and Diane Sacchitella's breach of contract, Fink and Gross have been damaged in an amount to be determined.

## AS AND FOR A SECOND CAUSE OF ACTION

38.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37 of this Complaint, as though fully set forth herein.

39.   Fink and Gross relied to their detriment upon the representations of Phil Sacchitella and Diane.

40.   As a result of their reliance, Fink and Gross have been damaged in an amount to be determined.

## AS AND FOR A THIRD CAUSE OF ACTION

41.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 40 of this Complaint, as though fully set forth herein.

42.   Defendants' misappropriation of the MySpace Site and the content thereon, including the Name, constitutes a wrongful conversion of Fink's property.

43.   As a result of that wrongful conversion, Fink has been damaged in an amount to be determined.

## AS AND FOR A FOURTH CAUSE OF ACTION

44.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43 of this Complaint, as though fully set forth herein.

45.   The disparaging comments Defendants published, as to Plaintiff Cummings, are libelous and libelous per se and said Plaintiff is entitled to an award of damages to compensate him.

## AS AND FOR A FIFTH CAUSE OF ACTION

46. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 45 of this Complaint, as though fully set forth herein.

47. The disparaging comments Defendants published, as to Plaintiffs Fink and Gross, constitute trade libel or trade disparagement and are libelous and/or are libelous per se and said Plaintiffs are entitled to an award of damages to compensate them.

## AS AND FOR A SIXTH CAUSE OF ACTION

48. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 of this Complaint, as though fully set forth herein.

49. The Photographs contain material wholly original with Fink and said work is copyrightable under the laws of the United States. (A copy of Fink's copyrighted Photograph is along with a copy of the version of the Photograph wrongfully copied and published by Defendants, deleting Fink's copyright notice, are annexed hereto and made a part hereof as Exhibit A.)

50. Fink, currently and at all relevant times, is and has been the sole proprietor of all right, title and interest in and to the copyright in the Photographs.

51. Fink has applied to the Register of Copyrights for a Certificate of Copyright of Registration for the Photograph.

52. Defendants knowingly, willfully and directly copied the Photograph in its entirety and published it for the purpose of promoting Diane throughout the world via the MySpace Site.

53. Defendant's intentional copying and publication of the Photograph constitutes a copyright infringement.

54. As a result of said copyright infringement, Fink has been damaged in an amount to be determined by the Court.

55. Defendant's copyright infringement was willful, knowing and deliberate.

56. As a result of said copyright infringement, Defendants are liable for and must pay Plaintiff's reasonable attorneys' fees and statutory damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION

57. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

58. As a result of Plaintiffs' efforts in training, recording and promoting Diane, Defendants have been unjustly enriched.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

59. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 58 of this Complaint, as though fully set forth herein.

60. Upon information and belief, Defendants continued to use the Name generally after Defendants' wrongful conversion of the same.

61. Defendants' use of the Name constitutes infringement of Fink's common law trademark and service mark in the Name.

62. Upon information and belief, Defendants continued to use or claim a right to use the Name and that continued use constitutes infringement of Fink's trademark and service mark in the Name.

63. As a result of Defendants' infringement, Fink has been damaged and continues to be damaged in an amount to be determined.

**WHEREFORE**, Plaintiffs respectfully demands that judgment be entered against Defendants and in favor of Plaintiffs, as follows:

1. On the First Cause of Action,

    A. judgment awarding Fink and Gross compensation for breach of contract;

    B. the costs and disbursements in this action; and

    C. such other and further relief as the Court may deem just and fair.

2. On the Second Cause of Action,

    A. judgment awarding Fink and Gross compensation for Plaintiffs' detrimental reliance on Defendants' promises;

    B. the costs and disbursements in this action; and

    C. such other and further relief as the Court may deem just and fair.

3. On the Third Cause of Action,

    A. Damages for Defendants' wrongful conversion

    B. the costs and disbursements in this action; and

    C. such other and further relief as the Court may deem just and fair.

4. On the Fourth Cause of Action,

    A. Damages in an amount to be determined to compensate Plaintiffs for libel and libel per se;

    B. the costs and disbursements in this action; and

    C. such other and further relief as the Court may deem just and fair.

5. On the Fifth Cause of Action,

    A. Damages in an amount to be determined to compensate Plaintiffs for trade libel, trade disparagement, libel and libel per se;

    B. the costs and disbursements in this action; and

    C. such other and further relief as the Court may deem just and fair.

6. On the Sixth Cause of Action,

A. Statutory damages or such other actual damages as the Court may deem fair and reasonable;

B. Reasonable attorneys' fees;

C. the costs and disbursements in this action; and

D. such other and further relief as the Court may deem just and fair.

7. On the Seventh Cause of Action,

A. Damages for unjust enrichment;

B. the costs and disbursements in this action; and

C. such other and further relief as the Court may deem just and fair.

8. On the Eighth Cause of Action,

A. Damages for infringement of Fink's trademark and service mark;

B. Injunctive relief enjoining Defendants from further use of the Name;

C. Declaratory relief declaring Fink to be the sole owner of the Name;

D. the costs and disbursements in this action; and

E. such other and further relief as the Court may deem just and fair.

Dated: March 13, 2007

**BOYLAN, BROWN, CODE, VIGDOR & WILSON, LLP**
Attorneys for Plaintiffs

By: _____
Mark A. Costello, Esq., of Counsel
Office and Post Office Address
2400 Chase Square
Rochester, New York  14604
Telephone:  (585) 232-5300
Email:  mac@boylanbrown.com